

PMC/ao 2011R00148

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

2013 NOV 20   P 2: 41

**UNITED STATES OF AMERICA,**

CLERK'S OFFICE
AT BALTIMORE

BY_____

Criminal Number: _RDB-13-0649_

-v-

**MICHAEL D. HAYDEN, JR.,**
**MICHAEL D. HAYDEN, JR., INC.,**
**WILLIAM J. LEDNUM**
  **a/k/a. "WILLIAM J. LEDNUM**
  **FISHERIES d/b/a"**
**KENT SADLER, and**
**LAWRENCE "DANIEL" MURPHY,**

**Defendants.**

**(Conspiracy, 18 U.S.C. § 371; Lacey Act False Labeling, 16 U.S.C. §§ 3372(d)(2), 3373(d)(3)(A)(ii); Lacey Act Attempted Trafficking, 16 U.S.C. §§ 3372(a)(2), 3372(a)(4), 3373(d)(1)(B); Lacey Act Trafficking, 16 U.S.C. §§ 3372(a)(2), 3373(d)(1)(B); Witness Retaliation, 18 U.S.C. § 1512(b)(2); Attempting to Influence Testimony of Grand Jury Witness, 18 U.S.C. § 1512(b)(1); Attempting to Prevent Witness from Testifying Before Grand Jury, 18 U.S.C. § 1512(b)(2); Aiding and Abetting, 18 U.S.C. § 2; Forfeiture (Lacey Act), 16 U.S.C. § 3374)**

**COUNT ONE**
(Conspiracy)

**INTRODUCTION**

The GRAND JURY CHARGES that at all times relevant to this Indictment:

**DEFENDANTS**

a.      **MICHAEL D. HAYDEN, JR.,** was a commercial fisherman, residing in

Tilghman Island, Maryland, and licensed in the State of Maryland under a commercial tidal fish

license (TFL # 12328) and possessing a Striped Bass (*Morone saxatilis*; a.k.a., "Rockfish")

allocation permit.

b.      **WILLIAM J. LEDNUM** was a commercial fisherman, residing in Tilghman

Island, Maryland, and licensed in the State of Maryland under a commercial tidal fish license

(TFL # 3160) and possessing a Striped Bass allocation permit.

1

c.      **MICHAEL D. HAYDEN, JR., INC.**, was an S-Corporation, organized under the laws of Maryland engaged in the "commercial fishing industry" and owned by **MICHAEL D. HAYDEN, JR.**, with a principal office located at 4912 Bar Neck Road, Tilghman Island, Maryland.

d.      **WILLIAM J. LEDNUM FISHERIES, d/b/a** was a sole proprietorship operating within the District of Maryland with its principal profession being "commercial fishing" and owned by **WILLIAM J. LEDNUM**.

e.      **KENT SADLER** resided in Tilghman Island, Maryland, and was a "helper" on fishing vessels owned by **WILLIAM J. LEDNUM** and **MICHAEL D. HAYDEN, JR.**, from 2007 through 2011.

f.      **LAWRENCE "DANIEL" MURPHY** resided in Saint Michaels, Maryland, and was a "helper" on fishing vessels owned by **WILLIAM J. LEDNUM** and **MICHAEL D. HAYDEN, JR.**, from 2007 through 2013.

## STATUTORY & REGULATORY BACKGROUND

### The Lacey Act

g.      The Lacey Act, 16 U.S.C. §§ 3371, *et seq.*, is one of several statutes that established a federal scheme for the protection and management of fish and wildlife resources.

h.      The Lacey Act and its implementing regulations define certain terms as follows:

i.      The Lacey Act, 16 U.S.C. § 3371(a), and its implementing regulations at 50 C.F.R. § 10.12, define "fish or wildlife" to mean: "any wild animal, whether alive or dead, including, without limitation any ... fish ... whether or not bred, hatched or born in captivity and includes any part, product, egg or offspring thereof."

2

ii.    The term "take" is defined in 16 U.S.C. § 3371(i) as captured, killed, or collected.

iii.   The term "transport" is defined in 16 U.S.C. § 3371(j) to mean "move, convey, carry, or ship by any means, or to deliver or receive for the purpose of movement, conveyance, carriage, or shipment."

i.    The Lacey Act contains several criminal provisions including: (i) 16 U.S.C. § 3373(d)(1)(B) which prohibits a person from knowingly engaging in conduct that involves the sale or purchase or, the offer for sale or purchase of, or the intent to sell or purchase, fish or wildlife in interstate commerce with a market value in excess of $350.00 knowing that the fish or wildlife were taken, possessed, transported or sold in violation of, or in a manner unlawful under, any underlying Federal, state, or tribal statute, regulation, or treaty provision; and (ii) 16 U.S.C. § 3372(d)(3)(A) which prohibits any person from knowingly making or submitting any false record, account, or label for, or any false identification of any fish or wildlife which has been, or is intended to be transported in interstate commerce and has a market value of more than $350.00.

### The Atlantic Striped Bass Fisheries Act, Atlantic States Marine Fisheries Commission, and Related Interstate and Federal Compacts

j.    The Atlantic States Marine Fisheries Commission ("Commission" or "ASMFC") was formed in or around 1942 to assist in managing and conserving coastal fisheries shared by fifteen (15) states along the Atlantic seaboard.

k.    Each state is represented by three Commissioners. These Commissioners participate in deliberations in the Commission's five main policy areas: interstate fisheries

3

management, research and statistics, habitat conservation, sport fish restoration, and law enforcement.

l.      Through the Interstate Fisheries Management Program ("ISFMP"), Commissioners determine fisheries management strategies that the states implement through fishing regulations. The ISFMP Policy Board, comprised of Commissioners from the fifteen member states and representatives of the District of Columbia, the Potomac River Fisheries Commission, the National Marine Fisheries Service, and the U.S. Fish and Wildlife Service, oversees the program and meets at least bi-annually to establish and monitor the direction of the program.

m.      In the 1970's the Commission prepared a coast-wide management plan for Striped Bass along the Atlantic Coast in response to declines in commercial Striped Bass harvests.

n.      Congress passed the Atlantic Striped Bass Conservation Act in 1984 and 1988, with amendments in 1986, and 1991. The Striped Bass Management Board, also comprised of Commissioners and federal agency representatives, considers and approves the development and implementation of the Striped Bass Fishery management plan, including the integration of scientific information (including harvest and population information from the various states), proposed management measures, and considerations for habitat conservation and the management of protected species/fishery interactions.

o.      The Atlantic Striped Bass Conservation Act further directed the Secretary of Commerce to promulgate regulations on Striped Bass fishing in the exclusive economic zone ("EEZ"; federal waters) and enables Federal imposition of a moratorium on Striped Bass fishing in states which failed to comply with the Fishery Management Plan.

p.      In 1985, the Commission became responsible for determining whether each coastal state had adopted all regulatory measures necessary to fully implement fishery management requirements of the Atlantic Striped Bass Fishery Management Plan through, among other things, a particular state's natural resource and fisheries regulations. The Commission must notify the Secretaries of Commerce and Interior immediately of any state which it determines is not satisfactorily implementing or enforcing requirements of the Plan.

q.      The State of Maryland's Striped Bass Fishery Regulations were reviewed and approved by the entities listed above for compliance with the Interstate Fisheries Management Program and ASMFC.

### Maryland Striped Bass Fishery Regulations[1]

r.      The State of Maryland, in Md. Code Ann., Natural Resources Article 4-701 *et seq.* and Md. Code of Regs. ("COMAR") 8.02.15.01 *et seq.*, prescribes the time, place, and manner by which Striped Bass may be legally taken, possessed, labeled, and sold by commercial fishermen.

s.      COMAR defines certain terms as follows:

     i.      COMAR § 08.02.15.02(B)(1) defines "allocation" as the pounds or numbers of Striped Bass which a commercial tidal fish licensee is allowed to harvest on a daily or seasonal basis. COMAR § 08.02.15.02(B)(1) (*eff.* 9/30/1990)

     ii.     COMAR defines "commercial tidal fish licensee" as a person licensed by Maryland Department of Natural Resources ("MDNR") to catch and sell finfish to include Striped Bass. COMAR § 08.02.15.02(B)(4) (*eff.* 4/6/2009), COMAR § 08.02.15.02(B)(3) (*eff.* 9/30/1990).

---

[1]  All references to the Md. Code Ann. ("COMAR"), contained in this Indictment refer to the regulatory citations in effect during the duration of the conspiracy charged in Count 1.

iii.   COMAR defines "Striped Bass allocation permit" as a permit issued by the MDNR which allows a person to commercially harvest a set amount of Striped Bass. COMAR § 08.02.15.02(B)(9) (*eff.* 4/6/2009), COMAR § 08.02.15.02(B)(8) (*eff.* 3/29/1993).

iv.   COMAR defines "tag" as a device approved by MDNR that is used to identify the harvest year, harvest gear, and individual that commercially harvested a Striped Bass. However, prior to 2009, did not list the year during which the Striped Bass were harvested. COMAR § 08.02.15.02(B)(10) (*eff.* 4/6/2009), COMAR § 08.02.15.02(B)(9) (*eff.* 3/29/1993).

v.   COMAR defines "target harvest" as the pounds or numbers of Striped Bass allowed by MDNR to be harvested in a quota year. COMAR § 08.02.15.02(B)(11) (*eff.* 4/6/2009), COMAR § 08.02.15.02(B)(10) (*eff.* 3/29/1993).

vi.   COMAR § 08.02.05.02(A)(6) (*eff.* 4/6/2009) and COMAR § 08.02.05.02(A)(4) (*eff.* 2/28/2005) define "drift gill net" as a net not secured to or anchored to the bottom, including a net rigged with up to 20 pounds of weight at each end, in addition to that weight required to achieve negative buoyancy.

vii.   COMAR § 08.02.05.02(A)(1) (*eff.* 9/3/1990) defines "anchor gill net" as a net that is stationary in the water and secured to the bottom by conventional anchors or heavy weights.

t.   Maryland regulations contain several general prohibitions regarding the harvesting of Striped Bass in Maryland waters. COMAR § 08.02.15.01 (*eff.* 6/10/2002) provides

6

that it is illegal for a person to take, posses, transport, export, process, sell, offer for sale, or ship any Striped Bass except as otherwise permitted under COMAR.

u.    Maryland regulations prescribe specific seasons for the harvest of Striped Bass.

  i.    The State of Maryland, pursuant to COMAR § 08.02.15.07(A)(3) (*eff.* 4/3/2000), prescribes commercial fishing seasons for the harvesting of Striped Bass taken by gill net (December 1 through the last day of February).

  ii.   Pursuant to COMAR § 08.02.15.12(H) (*eff.* 4/12/2004), upon public notice, the State of Maryland may suspend the season periodically to tally up quotas, reset allocations, or deal with other logistical issues. By public notice, the State of Maryland suspended its commercial Striped Bass gill net harvest from: January 16, 2009 at 3:00 a.m., until January 26, 2009 at 3:00 a.m.; February 11, 2009 at 6:00 p.m., until February 18, 2009 at 3:00 a.m.; and January 17, 2011 at 12:01 a.m., until February 1, 2011 at 3:00 a.m. Accordingly, no Striped Bass could be harvested by gill net during those time periods.

  iii.  COMAR § 08.02.15.03(D)(1) (*eff.* 4/12/2004) further provides that during the period of March 1 through May 31, a person may not catch, harass, harm, pursue, hunt, shoot, wound, or attempt to catch Striped Bass for commercial purposes.

v.    The State of Maryland provides that commercial fishermen must "register" prior to participating in a Striped Bass season.

  i.    Specifically, COMAR §§ 08.02.15.04(A)-(B) (*eff.* 7/12/1998, 4/6/2009) provides that a commercial tidal fish licensee shall register for a Striped Bass

allocation permit to participate in a Striped Bass season by (a) submitting an application to MDNR by August 31 and (b) designating on that application one of the following gear types: pound net, haul seine, commercial hook and line, or gill net and hook and line.

ii.    The State of Maryland then provides a registrant an "allocation" dictating the maximum weight of Striped Bass the specified licensee could harvest on a given day during a season.

w.    Maryland regulations dictate the manner and methods by which commercial fishermen may harvest Striped Bass following registration using gill net methods.

i.    Pursuant to COMAR § 08.02.15.07(D) (*eff.* 4/6/2009), only attended drift gill nets are permitted for the taking of Striped Bass. For a gill net to be considered "attended," COMAR § 08.02.05.02(A)(2) (*eff.* 11/20/1994) specifies that the licensee must remain in the boat within two (2) miles of the net while it is in waters of the Chesapeake Bay and within one (1) mile of the net while it is in a tributary of the Chesapeake Bay.

ii.    COMAR § 08.02.05.02(B)(1) (*eff.* 9/3/1990) specifies that a person may not set anchor gill nets to harvest Striped Bass. Anchor gill nets are defined in COMAR 08.02.05.02(A)(1) (*eff.* 9/3/1990), as a net that is stationary in the water and secured to the bottom by conventional anchors or heavy weights.

iii.    Pursuant to COMAR § 08.02.15.07(D)(6) (*eff.* 4/17/1998), drift gill nets must be marked with flags visible on the water surface and inscribed with a tidal fish licensees' number.

8

iv.     Pursuant to COMAR § 08.02.15.07(D)(4) (*eff.* 4/17/1998), a drift gill net may not be set before 3:00 a.m. and shall be retrieved and in the boat by 6:00 p.m.

x.      The State of Maryland regulates the state-wide harvest of Striped Bass during a specific season using a "tagging" system.

i.      Pursuant to COMAR § 08.02.15.05(A)(1) (*eff.* 4/6/2009, 9/30/1990) , prior to the start of a Striped Bass season, MDNR provides tamper-evident locking tags to each commercial tidal fish licensee who has registered, and been approved, to participate in a commercial Striped Bass fishery season. Pursuant to COMAR § 08.02.15.05(A)(2) (*eff.* 4/6/2009, 9/30/1990), MDNR may issue additional tags only if the harvest report submitted by the licensee indicates that both the quantity of tags issued by MDNR is insufficient to complete the season and does not report exceeding the number of tags issued to the licensee.  MDNR provided tags, upon request by the tidal fish licensee, in boxes containing 1,000 tags each.

ii.     Pursuant to COMAR § 08.02.15.05(A)(3) (*eff.* 4/6/2009) and COMAR § 08.02.15.05(A)(2) (*eff.* 8/11/2008, 9/30/1990), a commercial tidal fish licensee who catches Striped Bass for sale shall have in their possession (a) a commercial tidal fish license, (b) an allocation permit, and (c) unused tamper-evident tags issued by the Department.

iii.    The tags must be securely affixed to the harvested Striped Bass through the mouth and one-gill opening before removing a Striped Bass from a boat or removing a boat from the water if harvested by gill net.

iv.    COMAR § 08.02.15.05(A)(4) (*eff.* 4/6/2009) provides that Striped Bass tags cannot be transferred, reused, defaced, modified, or counterfeited. Prior to April 2009, Striped Bass tags could be transferred only in accordance with MDNR-approved license transfers. COMAR § 08.02.15.05(A)(3) (*eff.* 6/10/2002). Moreover, tags issued after April 2009 could not be transferred during the commercial Striped Bass season. The tags were changed to reflect the gear used to harvest the Striped Bass and the year during which the Striped Bass were harvested.

y.    The State of Maryland requires that commercially-harvested Striped Bass be counted and weighed at "check stations" after harvest and specifies that certain paperwork must be completed during this check-in to assist the State of Maryland in tracking the State-wide harvest and lengthening or shortening the Striped Bass season accordingly.

i.    Pursuant to COMAR § 08.02.15.05(D) (*eff.* 4/6/2009, 6/10/2002), within three (3) hours of completing a fishing trip and returning to dock and not later than 9:00 p.m., or, if caught by hook and line, not later than 9:00 a.m. the day following the harvest, a commercial tidal fish licensee must have their Striped Bass harvest counted and weighed at a MDNR-designated check station.

ii.    During check-in, a daily log sheet must be completed specifying numbers and weight of fish, date checked, commercial tidal fish license number, and Striped Bass allocation permit. MDNR will then use these daily log sheets to validate the licensees' Striped Bass allocation permit and adjust the remaining seasonal allowable harvest by subtracting the total daily harvest.

10

iii.   Pursuant to COMAR § 08.02.15.06 (*eff.* 4/6/2009, 1/17/2005), any tidal fish licensees are required to record their catch on forms provided by MDNR. This requirement includes an obligation for any commercial fishermen participating in a commercial Striped Bass season to submit "daily catch records" summarizing the numbers and weight of Striped Bass caught during each month of the season.

z.   A person may not buy for resale, process, pack, market, or otherwise deal in another's finfish, to include Striped Bass, from waters of the State of Maryland without a "seafood dealer's license" issued pursuant to Md. Code Ann., Natural Resources §§ 4-701(d)(4) (*eff.* 6/1/2007), 4-702(a) (*eff.* 7/1/2007) and its attendant regulations.

i.   Pursuant to Md. Code Ann., Natural Resources §§ 4-731(c) (*eff.* 1984) and its attendant regulations, any person who buys Striped Bass caught from the Chesapeake Bay and its tributaries for the purposes of resale shall maintain records showing every purchase made during the preceding 90-day period, the date and place of each purchase, the quantity purchased, and the name of the person from whom the fish were purchased. A person possessing a "seafood dealer's license" must prepare and provide to MDNR a "monthly report of seafood buying activity."

ii.   Pursuant to Md. Code Ann., Natural Resources §§ 4-206(b) (1994) every person engaged in the business of packing or dealing in any fish resources within MDNR's jurisdiction shall keep accurate books, statements, and accounts showing every detail for of the business.

### The Count

1)      Paragraphs a through z (including all subparagraphs) of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2)      Beginning in or around January 2007 and continuing through June 2011, within the District of Maryland and elsewhere,

**MICHAEL D. HAYDEN, JR.,**
**WILLIAM J. LEDNUM,**
**MICHAEL D. HAYDEN, JR., INC.,**
**KENT SADLER, and**
**LAWRENCE "DANIEL" MURPHY**

did combine, confederate, conspire, and agree together with others both known and unknown to the Grand Jury (i) to defraud the United States, that is:

a)  to impede and impair the governmental functions of the United States Departments of Interior and Commerce, Fish and Wildlife Service, National Oceanic Atmospheric Administration, National Marine Fisheries Service, and Atlantic States Marine Fisheries Commission in enforcing federal statutes and regulations and interstate compacts relevant to the management of Striped Bass populations and enforcement of federal wildlife and fisheries laws including, but not limited to, the Lacey Act and Atlantic Striped Bass Conservation Act.

and (ii) to knowingly commit offenses against the United States, that is to:

b)  violate the Lacey Act's false labeling provisions, 16 U.S.C. §§ 3372(d)(2), 3373(d)(3)(A)(ii); and

c)  violate the Lacey Act's trafficking provisions, 16 U.S.C. §§ 3372(a)(2), 3372(a)(4), 3373(d)(1)(B).

**Means & Manner**

The defendants and their co-conspirators sought to accomplish the objects of the conspiracy through the following methods and means, among others:

3)      **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR., INC., KENT SADLER, LAWRENCE "DANIEL" MURPHY** and other unindicted co-conspirators both known and unknown to the Grand Jury (collectively referred to herein as "the conspirators") purchased and/or fabricated illegal gill nets.

4)      The conspirators placed illegal and other gill nets both during closed seasons, and during open seasons overnight between 6:00 p.m., and 3:00 a.m., in an effort to exceed their MDNR-approved allocations.

5)      The conspirators left illegal and other gill nets overnight or in place for several days, in an effort to illegally increase their harvest of Striped Bass.

6)      The conspirators placed illegal and other gill nets before the season was re-opened by MDNR.

7)      The conspirators evaded MDNR with the use of on-board radar to prevent detection while they were setting and retrieving their illegal gill nets.

8)      **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM, and MICHAEL D. HAYDEN, JR., INC.,** recruited other unindicted co-conspirators to "check in" Striped Bass poundage that was in excess of their MDNR-approved daily allocations for a small fee and then re-acquired these excess fish after they were checked-in.

9)      **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM, and MICHAEL D. HAYDEN, JR., INC.,** dealt in un-indicted co-conspirators' fish without a MDNR seafood dealer's license.

10)   The conspirators failed to submit and/or falsified paperwork associated with mandatory MDNR reporting requirements.

11)   The conspirators, recruited personnel at the check-in stations to falsify the numbers and weight of the Striped Bass that they harvested, underreporting the weights and/or over-reporting the numbers of the Striped Bass harvested on a given day.

12)   The conspirators falsified check-in paperwork in an effort to over-report the number of fish caught and tagged and then requested additional tags from MDNR.

13)   **MICHAEL D. HAYDEN, JR., and MICHAEL D. HAYDEN, JR., INC.,** falsely tagged and checked-in Striped Bass as "hook-and-line" caught rather than illegally "gill-net" harvested.

14)   **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR., INC.,** and other co-conspirators sold their Striped Bass, including those falsely labeled and/or taken, to locations in New York, Delaware, Maryland, and Pennsylvania.

15)   **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM, and MICHAEL D. HAYDEN, JR., INC.,** directed others to destroy surplus tags they acquired from MDNR under false pretenses.

16)   Once **MICHAEL D. HAYDEN, JR.,** realized he was under investigation he contacted employee(s) of other indicted and unindicted co-conspirators and physically threatened them in an effort to chill, manipulate, and/or prevent them from relaying information to law enforcement officers.

### Overt Acts

*Sales of Falsely Labeled Striped Bass During December 2007*

17)     Between December 7, 2007, and December 21, 2007, **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM**, and other co-conspirators, either submitted or caused others to submit false documents to MDNR at least four (4) times:  to wit, they falsified and submitted Striped Bass allocation cards listing approximately 1,450 Striped Bass totaling approximately 3,450 pounds at Harrison Oyster, Co., when in truth and in fact they checked-in fewer, but larger fish.

18)     During the month of December 2007, **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC.**, and other co-conspirators illegally sold approximately 8,805 pounds of falsely-labeled Striped Bass (i.e., 5,355 pounds more than they checked-in during the entire month of December 2007) to seafood wholesalers in Maryland, Delaware, Pennsylvania, and New York for approximately $18,485.00.  Specifically:

    a)  On or about December 5, 2007, **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM**, and other co-conspirators sold 173 pounds of Striped Bass to Blue Ribbon Fish, Co., in New York State.

    b)  On or about December 10, 2007, **MICHAEL D. HAYDEN, JR.**, and other co-conspirators sold 270 pounds of "8-up" and 966 pounds of "2-4" for a total of 1,236 pounds of Striped Bass to Samuels & Son, Seafood, **INC.**

    c)  Between December 14, 2007, and December 17, 2007, **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM**, and other co-conspirators made at least two (2) sales totaling approximately 4,274 pounds of "8-up," 15 pounds of "5-8," and 42 pounds of "2-4" Striped Bass for a total of for a total 4,331 pounds of Striped Bass to Ocean Fresh Seafood, **INC.**, in Delaware.

d) On or about December 18, 2007, **MICHAEL D. HAYDEN, JR.**, and other

co-conspirators sold 1,486 pounds of "8+" and 58 pounds of "5-8" Striped

Bass to Samuels & Son Seafood, **INC.**, in Pennsylvania.

e) On or about December 21, 2007, **MICHAEL D. HAYDEN, JR.**, and other

co-conspirators sold 1,500 pounds of "8-up" and "8-15" and 21 pounds of "2-

4" Striped Bass to Reliant Fish Company, **INC.**, in Maryland.

19)     Between December 23, 2007, and April 9, 2008, **WILLIAM J. LEDNUM and**

**MICHAEL D. HAYDEN, JR.**, falsified and submitted "Daily Catch Records" to MDNR

reporting that they caught 1,950 and 0 pounds of Striped Bass during the month of December

2007 when in truth and in fact they harvested 8,805 pounds of Striped Bass.

*Sales of Falsely-Labeled Striped Bass During January 2008*

20)     During the month of January 2008, **MICHAEL D. HAYDEN, JR., and**

**WILLIAM J. LEDNUM** along with other co-conspirators, either submitted or caused others to

submit false documents to MDNR: to wit, they falsely checked-in 1,508 Striped Bass totaling

approximately 3,577 pounds when in truth and in fact they checked-in fewer but larger fish.

Specifically:

a) On or about January 2, 2008, **WILLIAM J. LEDNUM, MICHAEL D.**

**HAYDEN, JR.**, and other co-conspirators checked-in Striped Bass totaling

approximately 1,002 pounds at Caper's Wharf and falsified the number of fish

checked-in as 408 Striped Bass when, in truth and in fact, there were fewer

but larger fish.

b) Between January 4, 2008, and January 18, 2008, **WILLIAM J. LEDNUM,**

**MICHAEL D. HAYDEN, JR.**, and other co-conspirators checked-in and

16

submitted false documents to MDNR at Harrison Oyster, Co., at least three (3) times: to wit, they falsified and submitted Striped Bass allocation cards listing approximately 1,100 Striped Bass totaling approximately 2,575 pounds when, in truth and in fact, there were fewer, but larger fish.

21)   During the month of January 2008, **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC.**, and other co-conspirators illegally sold at total of 16,601 pounds of falsely-labeled Striped Bass (i.e., 13,024 pounds more than they checked-in during the entire month of January) to seafood wholesalers in Maryland, Pennsylvania, and New York for approximately $47,580.38. Specifically:

a)   Between January 1 and January 11, 2008, **MICHAEL D. HAYDEN, JR.**, and other co-conspirators made at least four (4) sales totaling approximately 8,384 pounds of "8+" and 59 pounds of "2-4" for a total of 8,443 pounds of Striped Bass to Reliant Fish, **INC.**, in Maryland.

b)   Between January 6, 2008, and January 17, 2008, **MICHAEL D. HAYDEN, JR.**, and other co-conspirators made at least three (3) sales totaling approximately 4,012 pounds of "8+" and 77 pounds of "5-8" for a total of 4,089 pounds of Striped Bass to Samuels & Son Seafood, **INC.**, in Pennsylvania.

c)   On or about January 7, 2008, **MICHAEL D. HAYDEN, JR.**, and other co-conspirators sold 623 pounds of Striped Bass to Blue Ribbon Fish Company, **INC.**, in New York.

d)   Between January 22, 2008, and January 31, 2008, **MICHAEL D. HAYDEN, JR.**, and other co-conspirators made at least four (4) sales totaling

approximately 3,020 pounds of Striped Bass to Fair Fish Company, **INC.**, in New York.

e) On January 30, 2008, **MICHAEL D. HAYDEN, JR.**, and other co-conspirators sold 101 pounds of "5-8" and 325 pounds of "2-4" for a total of 426 pounds of Striped Bass to Southern Connection Seafood, d/b/a, in Maryland.

22)   **MICHAEL D. HAYDEN, JR.**, failed to file the required "Daily Catch Record" to MDNR for his harvest of Striped Bass during January 2008.  On or about March 10, 2008, **WILLIAM J. LEDNUM** falsified and submitted a "Daily Catch Record" to MDNR reporting that he caught 1,804 pounds of Striped Bass during the month of January 2008 when in truth and in fact he  harvested 16,601 pounds of Striped Bass.

*Sales of Falsely-Labeled Striped Bass During December 2008*

23)   Between December 16, 2008, and December 23, 2008, **WILLIAM J. LEDNUM,** **MICHAEL D. HAYDEN, JR.**, and other co-conspirators, either submitted or caused others to submit false documents to MDNR at least three (3) times: to wit, they falsified and submitted Striped Bass allocation cards listing approximately 475 Striped Bass totaling approximately 1,351 pounds at Harrison Oyster Co., when in truth and in fact they checked-in fewer but larger fish.

24)   Between approximately December 16, 2008 and December 31, 2008, **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC.**, and other co-conspirators illegally sold at total of 3,831 pounds of falsely-labeled Striped Bass (i.e., 2,480 pounds more than they checked-in between December 16 and 31, 2008) to seafood wholesalers in New York for approximately $11,619.75.  Specifically:

a) Between December 16, 2008, and December 31, 2008, **WILLIAM J. LEDNUM** and other co-conspirators made at least five (5) sales totaling approximately 3,489 pounds of Striped Bass (size listed as "10+" on available shipping records) to Lou's Fish Market in New York.

b) On or about December 31, 2008, **MICHAEL D. HAYDEN, JR.**, and other co-conspirators sold 342 pounds of Striped Bass to Blue Ribbon Fish Company, in New York.

25)   **MICHAEL D. HAYDEN, JR.**, failed to file the required "Daily Catch Record" to MDNR for his harvest of Striped Bass during December 2008. On or before January 3, 2009, **WILLIAM J. LEDNUM** falsified and submitted a "Daily Catch Record" to MDNR reporting that he caught 2,922 pounds of Striped Bass during the month of December 2008 when in truth and in fact he harvested 8,204 pounds of Striped Bass.

*Sales of Falsely-Labeled Striped Bass During January 2009*

26)   During the month of January 2009, **MICHAEL D. HAYDEN, JR., and WILLIAM J. LEDNUM** along with other co-conspirators either submitted or caused others to submit false documents to MDNR at least five (5) times: to wit, they falsely checked-in 765 Striped Bass totaling approximately 3,500 pounds when in truth and in fact they checked-in fewer but larger fish. Specifically:

a) Between January 5, 2009, and January 14, 2009, **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR.**, and other co-conspirators checked-in and submitted false documents to MDNR at least three (3) times: to wit they falsified and submitted Striped Bass allocation cards listing approximately

375 Striped Bass at Harrison Oyster, Co., totaling approximately 1,841 pounds when, in truth and in fact, there were fewer, but larger fish.

b) Between January 26, 2009, and January 27, 2009, **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR.,** and other co-conspirators checked-in and submitted false documents to MDNR at least two (2) times: to wit they falsified and submitted Striped Bass allocation cards listing approximately 390 Striped Bass totaling approximately 1,659 pounds at Caper's Wharf, **INC.,** when in truth and in fact, there were fewer but larger fish.

27)     Between January 5, 2009, and January 30, 2009, **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR., INC.,** and other co-conspirators made at least eleven (11) sales totaling approximately 12,528 pounds (i.e., 9,028 pounds more than they checked-in during the entire month of January) of falsely labeled Striped Bass to Lou's Fish Market in New York.  These eleven sales totaled approximately $48,655.55.  Of those eleven (11) sales, three (3) sales occurred between January 16, 2009, and January 25, 2009 when MDNR had closed the gill-netting season for Striped Bass in Maryland.

28)     **MICHAEL D. HAYDEN, JR.,** failed to file the required "Daily Catch Record" to MDNR for his harvest of Striped Bass during January 2009.  On or before February 4, 2009, **WILLIAM J. LEDNUM** falsified and submitted a "Daily Catch Record" to MDNR reporting that he caught 2,159 pounds of Striped Bass during the month of January 2009 when in truth and in fact they harvested 12,528 pounds of Striped Bass.

*Trafficking of Striped Bass during January 2009 Temporary Gill-Net Season Closure*

29)     Between approximately January 16, 2009, and January 23, 2009, defendants **MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC., and WILLIAM J.**

LEDNUM along with other co-conspirators harvested Striped Bass during a time with MDNR had temporarily closed the Striped Bass gill-net season.

30)     Between approximately January 20, 2009, and January 23, 2009, defendants **MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC., and WILLIAM J. LEDNUM** made three (3) separate shipments totaling 4,564 pounds of Striped Bass, from Maryland to seafood wholesalers in New York.

31)     **MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC., and WILLIAM J. LEDNUM** sold the aforementioned 4,564 pounds of Striped Bass to seafood wholesalers in New York for a total of $19,970.00.

*Sales of Falsely-Labeled Striped Bass During February 2009*

32)     During the month of February 2009, **MICHAEL D. HAYDEN, JR., and WILLIAM J. LEDNUM** along with other co-conspirators either submitted or caused others to submit false documents to MDNR at least five (5) times: to wit, they falsely checked-in 602 Striped Bass totaling approximately 2,986 pounds when in truth and in fact they checked-in fewer but larger fish.  Specifically:

  a)  Between February 2, 2009, and February 6, 2009, **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR.,** and other co-conspirators checked-in and submitted false documents to MDNR at least two (2) times:  to wit, they falsified and submitted Striped Bass allocation cards listing approximately 387 Striped Bass totaling approximately 1,672 pounds at Caper's Wharf, when, in truth and in fact, there were fewer but larger fish.

  b)  Between February 11, 2009, and February 24, 2009, **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR.,** and other co-conspirators

checked-in and submitted false documents to MDNR, at least three (3) times: to wit, they falsified and submitted Striped Bass allocation cards listing approximately 215 Striped Bass totaling 1,314 pounds at Harrison Oyster, Co., when, in truth and in fact, there were fewer, but larger fish.

33)    During the month of February 2009, **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC.**, and other co-conspirators illegally sold at total of 15,310 pounds of falsely-labeled Striped Bass (i.e., 12,324 pounds more than they checked-in during the entire month of February) to seafood wholesalers in New York for approximately $35,510.50.  Specifically:

    a)  Between February 3, 2009, and March 3, 2009, **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM**, and other co-conspirators made at least nine (9) sales totaling approximately 11,899 pounds of Striped Bass to Lou's Fish Market in New York.  At least one of those sales occurred between February 11, 2009, and February 17, 2009, when the gill-netting season was closed.

    b)  Between February 3, 2009, and February 9, 2009, **MICHAEL D. HAYDEN, JR.**, and other co-conspirators made at least three (3) sales totaling approximately 3,411 pounds of Striped Bass to Fair Fish, **INC.**, in New York.

34)    **MICHAEL D. HAYDEN, JR.**, failed to file the required "Daily Catch Record" to MDNR for his harvest of Striped Bass during February 2009.  On or before March 4, 2009, **WILLIAM J. LEDNUM** falsified and submitted a "Daily Catch Record" to MDNR reporting that he caught 1,547 pounds of Striped Bass during the month of February 2009 when in truth and in fact they harvested 15,310 pounds of Striped Bass.

*Trafficking of Striped Bass During February 2009 Temporary Gill-Net Season Closure*

35)     Between approximately February 11, 2009, and February 18, 2009, defendants **MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC., and WILLIAM J. LEDNUM** along with other co-conspirators harvested Striped Bass during a time with MDNR had temporarily closed the Striped Bass gill-net season.

36)     Between approximately February 11, 2009, and February 18, 2009, defendants **MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC., and WILLIAM J. LEDNUM** made at least three (3) separate sales transactions totaling approximately 4,020 pounds of Striped Bass, from Maryland to seafood wholesalers in New York.

37)     **MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC.,  and WILLIAM J. LEDNUM** sold the approximately 4,020 pounds of Striped Bass to seafood wholesalers in New York for approximately $9,911.00.

*Sales of Falsely-Labeled Striped Bass During January 2010*

38)     Between January 18, 2010, and January 20, 2010, **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR.,** and other co-conspirators either submitted or caused others to submit false documents to MDNR at least two (2) times:  to wit, they falsified and submitted Striped Bass allocation cards listing approximately 1,160 Striped Bass totaling approximately 2,799 pounds at Caper's Wharf, when, in truth and in fact, there were fewer but larger fish.

39)     During the month of January 2010, **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC.,** and other co-conspirators sold substantially fewer than 1,160 Striped Bass totaling approximately 3,992 pounds to seafood wholesalers in New York for approximately $18,695.50.  Specifically, between January 20, 2010, and January 27, 2010 **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM, and**

other co-conspirators made at least three (3) sales totaling approximately 3,992 pounds of Striped Bass to Lou's Fish Market in New York.

*Sales of Falsely-Labeled Striped Bass During February 2010 &*
*Acts of Concealment Following Execution of Search Warrants*

40)     Between February 2, 2010, and February 9, 2010, **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR.,** and other co-conspirators either submitted or caused others to submit false documents to MDNR at least three (3) times: to wit, they falsified and submitted Striped Bass allocation cards listing approximately 1,707 Striped Bass totaling approximately 4,870 pounds at Caper's Wharf when, in truth and in fact, there were fewer but larger fish.

41)     Between February 2, 2010, and February 17, 2010, **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR., INC.,** and other co-conspirators made at least four (4) sales totaling approximately 11,662 pounds (i.e., 6,792 pounds more than they checked-in during the same time period) of Striped Bass to Lou's Fish Market in New York with a corresponding sales price of approximately $28,014.50.  At least one (1) of those sales occurred between February 10, 2010, and February 17, 2010, when the gill-netting season was closed in Maryland.

42)     **MICHAEL D. HAYDEN, JR.,** failed to file the required "Daily Catch Record" to MDNR for his harvest of Striped Bass during February 2010.  On or before February 28, 2010, **WILLIAM J. LEDNUM** falsified and submitted a "Daily Catch Record" to MDNR reporting that he caught 2,436 pounds of Striped Bass between February 2, 2010, and February 16, 2010 when in truth and in fact they harvested 11,662 pounds of Striped Bass during that same time period.

43)     After search warrants were executed at Caper's Wharf, **INC.,** on or about February 18, 2010, **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM, MICHAEL D.**

HAYDEN, JR., INC., and other co-conspirators, revised their method of completing "check-in" documentation and accounting and shipping records so that the weight of Striped Bass harvested matched exactly to what was sold at Lou's Fish Market in New York.

*Trafficking of Striped Bass During February 2010 Temporary Gill-Net Season Closure*

44)     Between approximately February 10, 2010, and February 22, 2010, defendants **MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC., and WILLIAM J. LEDNUM** along with other co-conspirators harvested Striped Bass during a time with MDNR had temporarily closed the Striped Bass gill-net season.

45)     Between approximately February 10, 2010, and February 22, 2010, defendants **MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC.,  and WILLIAM J. LEDNUM** made a shipment totaling 1,499 pounds of Striped Bass, from Maryland to seafood wholesalers in New York.

46)     **MICHAEL D. HAYDEN, JR., MICHAEL D. HAYDEN, JR., INC.,  and WILLIAM J. LEDNUM** sold the aforementioned 1,499 pounds of Striped Bass to seafood wholesalers in New York for a total of $4,497.00.

*Attempted Poaching of Striped Bass in January/February 2011*

47)     In or before January 2011, **WILLIAM J. LEDNUM** acquired and/or fabricated weights to be used on illegal gill nets.

48)     In or before January 2011, defendants **WILLIAM J. LEDNUM, MICHAEL D. HAYDEN, JR., and MICHAEL D. HAYDEN, JR., INC.**, recruited and employed other co-conspirators – i.e., **KENT SADLER and LAWRENCE "DANIEL" MURPHY** -- to man their fishing vessel and harvest more than the daily vessel weight limit of Striped Bass for a single-vessel fishing trip scheduled from January 31 to February 1, 2011.

49)     Prior to 3:00 a.m. on February 1, 2011 (i.e., prior to the season opening when gill-netting was prohibited by COMAR), the defendants set illegal, unmarked gill nets in the Chesapeake Bay and left them unattended.

50)     On or about February 1, 2011, the defendants illegally netted and attempted to harvest approximately 20,000 pounds of Striped Bass in their illegal and unmarked gill nets.

51)     On or about February 1, 2011, the defendants attempted to recover their illegal, unmarked gill nets but were prevented from doing so by law enforcement.

*June 2011 Illegal Harvesting of Striped Bass &*
*False "Hook-and-Line" Tagging*

52)     On or about June 22, 2011, **MICHAEL D. HAYDEN, JR.**, and other co-conspirators illegally harvested 132 pounds of Striped Bass.

53)     On or about June 22, 2011, **MICHAEL D. HAYDEN, JR.**, and other co-conspirators illegally harvested and falsely-tagged the Striped Bass as caught via "hook-and-line," when in truth and in fact, they were harvested with gill nets or other illegal means.

54)     On or about June 22, 2011, after the illegally harvested Striped Bass was discovered on his fishing vessel, **MICHAEL D. HAYDEN, JR.**, lied to law enforcement officers claiming the fish were legally taken and tagged "hook-and-line" despite the fact there was no fishing pole anywhere on the fishing vessel.

*Requesting Additional Tags from MDNR Under False Pretenses*

55)     **MICHAEL D. HAYDEN, JR.**, requested additional tags from the MDNR Fisheries Office under false pretenses: to wit, on or about the following dates he submitted requests to MDNR for more tags claiming he had used the majority of the tags previously provided when in truth and in fact he still had a surplus of tags: January 22, 2007, January 30, 2007, February 13, 2007, February 22, 2007, January 5, 2009, and January 7, 2010.

56)    **WILLIAM J. LEDNUM**, requested additional tags from the MDNR Fisheries Office under false pretenses: to wit, on or about the following dates he submitted requests to MDNR for more tags claiming he had used the majority of the tags previously provided when in truth and in fact he still had a surplus of tags: January 22, 2007, January 30, 2007, February 13, 2007, February 22, 2007, January 5, 2009, and January 7, 2010.

*Additional Acts of Obstruction and Concealment*

57)    On or about February 2011, after search warrants were executed at Caper's Wharf, and at their personal residences, **MICHAEL D. HAYDEN, JR., and WILLIAM J. LEDNUM** along with other co-conspirators burned, destroyed, and/or otherwise disposed of surplus tags they had acquired from MDNR under false pretenses in an effort to obstruct the investigation.

*Total Consideration Paid to and Amongst the Conspirators for the*
*Striped Bass Poaching*

58)    Between January 2007 and February 2011, defendants **MICHAEL D. HAYDEN, JR., WILLIAM J. LEDNUM, and MICHAEL D. HAYDEN, JR., INC.,** paid defendants **DANIEL J. MURPHY and KENT SADLER** at least $74,510.00 and $27,275.00 respectively.

59)    Between January 2007 and February 2011, the defendants and other co-conspirators harvested and sold at least 185,925 pounds of Striped Bass to wholesalers in Maryland, Pennsylvania, Delaware, and New York while checking in only 106,801 pounds of Striped Bass at check-in stations in Maryland.  The wholesale value of this Striped Bass was at least $498,293.47 with a much higher retail value.

All in violation of 18 U.S.C. § 371.

## COUNT TWO through SEVEN
(Lacey Act Trafficking)

60)     Paragraphs a through z (including all subparagraphs) of Count One of this

Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

61)     On or about the dates listed below, within the District of Maryland and elsewhere,

### MICHAEL D. HAYDEN, JR.,
### WILLIAM J. LEDNUM, and
### MICHAEL D. HAYDEN, JR., INC.,

and other unindicted co-conspirators, both personally and by and through the actions of their

agents and employees, did knowingly engage in conduct involving the sale and purchase of fish,

and the intent to sell and purchase fish, namely Striped Bass, with a market value in excess of

$350, and did knowingly transport, receive, acquire, purchase, and sell such fish in interstate

commerce, knowing the fish to have been taken in violation of the laws and regulations of the

State of Maryland, specified in the table below:

| Count | Approximate Date(s) | Defendant(s) | Approximate MD Harvest, Interstate Transport & Sale of Striped Bass | Maryland Law Violation |
|---|---|---|---|---|
| 2 | 1/16/2009-1/23/2009 | Lednum | 1,146 pounds for $5157.00 | COMAR §§ .08.02.15.01 (*eff.* 6/10/2002), .08.02.15.12 (*eff.* 2/25/2008, 1/17/2005); Md. Code Ann., NR §§ 4-206 (*eff.* 1984), 4-701 (*eff.* 6/1/2007), 4-702 (*eff.* 7/1/2007), 4-731 (*eff.* 1984) |
| 3 | 1/16/2009-1/23/2009 | Hayden and MICHAEL D. HAYDEN, JR. Inc. | 1,146 pounds for $5157.00 | COMAR §§ .08.02.15.01 (*eff.* 6/10/2002), .08.02.15.12 (*eff.* 2/25/2008); Md. |

| | | | | |
|---|---|---|---|---|
| | | | | Code Ann., NR §§ 4-206 (*eff.* 1984), 4-701 (*eff.* 6/1/2007), 4-702 (*eff.* 7/1/2007), 4-731 (*eff.* 1984) |
| 4 | 2/11/2009-2/17/2009 | **Lednum** | 1,610 pounds for $3,955.50 | COMAR §§ .08.02.15.01 (*eff.* 6/10/2002), .08.02.15.12 (*eff.* 2/25/2008); Md. Code Ann., NR §§ 4-206 (*eff.* 1984), 4-701 (*eff.* 6/1/2007), 4-702 (*eff.* 7/1/2007), 4-731 (*eff.* 1984) |
| 5 | 2/11/2009-2/17/2009 | **Hayden and MICHAEL D. HAYDEN, JR. Inc.** | 1,610 pounds for $3,955.50 | COMAR §§ .08.02.15.01 (*eff.* 6/10/2002), .08.02.15.12 (*eff.* 2/25/2008); Md. Code Ann., NR §§ 4-206 (*eff.* 1984), 4-701 (*eff.* 6/1/2007), 4-702 (*eff.* 7/1/2007), 4-731 (*eff.* 1984) |
| 6 | 2/10/2010-2/16/2010 | **Lednum** | 750 pounds for $2,250.00 | COMAR §§ .08.02.15.01 (*eff.* 6/10/2002), .08.02.15.12 (*eff.* 2/25/2008); Md. Code Ann., NR §§ 4-206 (*eff.* 1984), 4-701 (*eff.* 6/1/2007), 4-702 (*eff.* 7/1/2007), 4-731 (*eff.* 1984) |
| 7 | 2/10/2010-2/16/2010 | **Hayden and MICHAEL D. HAYDEN, JR. Inc.** | 749 pounds for $2,247.00 | COMAR §§ .08.02.15.01 (*eff.* 6/10/2002), .08.02.15.12 (*eff.* 2/25/2008); Md. Code Ann., NR §§ 4-206 (*eff.* |

| | | | | 1984), 4-701 (*eff.* 6/1/2007), 4-702 (*eff.* 7/1/2007), 4-731 (*eff.* 1984) |
|---|---|---|---|---|

All in violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(2), 3373(d)(1)(B) and 18 U.S.C. § 2

## COUNTS EIGHT through FIFTEEN
(Lacey Act False Labeling)

62)     Paragraphs a through z (including all subparagraphs) of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

63)     On or about the dates listed below, within the District of Maryland and elsewhere, defendants,

### WILLIAM J. LEDNUM,
### MICHAEL D. HAYDEN, JR.,
### MICHAEL D. HAYDEN, JR., INC.

specified in the table below did knowingly make and submit, and cause to be made and submitted, false records, accounts, labels for, and false identifications of fish and wildlife, namely Striped Bass, with a market value greater than $350, and that was, or was intended to be, transported in interstate commerce, and did engage in conduct involving the sale or purchase of, offer of sale or purchase of, and commission of an act with intent to sell or purchase such Striped Bass, in that the defendants falsely labeled, and caused to be falsely labeled, the Striped Bass identified below:

| Count | Approximate Date(s) | Defendant(s) | Description of False Label |
|-------|---------------------|--------------|----------------------------|
| 8 | 12/16/2008 to 12/31/2008 | Hayden & Michael D. Hayden Jr., INC. | Falsified and submitted Striped Bass allocation cards to MDNR listing approximately 200 Striped Bass totaling approximately 500 pounds. |
| 9 | 12/16/2008 to 12/31/2008 | Lednum | Falsified and submitted Striped Bass allocation cards to MDNR listing approximately 275 Striped Bass totaling approximately 851 pounds. |
| 10 | 01/01/2009 to 01/30/2009 | Hayden & Michael D. Hayden Jr., INC. | Falsified and submitted Striped Bass allocation cards to MDNR listing approximately 278 Striped Bass totaling approximately 1,341 pounds. |
| 11 | 01/01/2009 to 01/30/2009 | Lednum | Falsified and submitted Striped Bass allocation cards to MDNR listing approximately 487 Striped Bass totaling approximately 2,159 pounds. |

31

| 12 | 02/02/2009 to 03/03/2009 | Hayden & MICHAEL D. HAYDEN, JR., INC. | Falsified and submitted Striped Bass allocation cards to MDNR listing approximately 274 Striped Bass totaling approximately 1,439 pounds. |
|----|--------------------------|---------------------------------------|---------------------------------------------------------------------------------------------------------------------------------------|
| 13 | 02/02/2009 to 03/03/2009 | Lednum | Falsified and submitted Striped Bass allocation cards to MDNR listing approximately 328 Striped Bass totaling approximately 1,547 pounds. |
| 14 | 01/18/2010 to 01/27/2010 | Lednum | Falsified and submitted Striped Bass allocation cards to MDNR listing approximately 514 Striped Bass totaling approximately 1,233 pounds. |
| 15 | 02/01/2010 to 02/16/2010 | Lednum | Falsified and submitted Striped Bass allocation cards to MDNR listing approximately 868 Striped Bass totaling approximately 2,436 pounds. |

All in violation of the Lacey Act, 16 U.S.C. §§ 3372(d)(2), 3373(d)(3)(A)(ii) and 18 U.S.C. § 2.

## COUNTS SIXTEEN through TWENTY
(Lacey Act False Labeling)

64)     Paragraphs a through z (including all subparagraphs) of Count One of this

Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

65)     On or about the dates listed below, within the District of Maryland and elsewhere,
the defendants

### WILLIAM J. LEDNUM,
### MICHAEL D. HAYDEN, JR., and
### MICHAEL D. HAYDEN, JR., INC.

specified in the table below did knowingly make and submit, and cause to be made and

submitted, false records, accounts, labels for, and false identifications of fish and wildlife,

namely Striped Bass, with a market value greater than $350, and that was, or was intended to be,

transported in interstate commerce, and did engage in conduct involving the sale or purchase of,

offer of sale or purchase of, and commission of an act with intent to sell or purchase such Striped

Bass, in that the defendants falsely labeled and caused to be falsely labeled the Striped Bass

identified below:

| Count | Approximate Date | Defendant | False Entry On Monthly "Daily Catch Record" Filed w/ MDNR |
|-------|------------------|-----------|-----------------------------------------------------------|
| 16 | 1/9/2009 | Lednum | Falsified and submitted entries on "daily catch records" reporting that he caught 2,922 pounds of Striped Bass during the month of December 2008. |
| 17 | 2/4/2009 | Lednum | Falsified and submitted entries on "daily catch records" reporting that he caught 2,159 pounds of Striped Bass during the month of January 2009. |
| 18 | 3/4/2009 | Lednum | Falsified and submitted entries on "daily catch records" reporting that they caught 1,547 pounds of Striped Bass during the month of February 2009. |
| 19 | 2/28/2010 | Lednum | Falsified and submitted entries on "daily catch records" reporting that he caught 2,436 pounds of Striped Bass between February 2, 2010, and February 16, 2010. |
| 20 | 4/13/2011 | Hayden & MICHAEL D. HAYDEN, | Submitted a "daily catch records" claiming he "did not fish this month [01/11]." |

| | | JR., INC. | |
|---|---|---|---|
| 21 | 4/13/2011 | Hayden & MICHAEL D. HAYDEN, JR., INC. | Submitted a "daily catch records" claiming he "did not fish this month [02/11]." |

All in violation of the Lacey Act, §§ 3372(d)(2), 3373(d)(3)(A)(ii) and 18 U.S.C. § 2.

## COUNT TWENTY-TWO
(Lacey Act Attempted Trafficking)

66)    Paragraphs a through z (including all subparagraphs) of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

67)    On or about January 31, 2011 through on or about February 1, 2011, within the District of Maryland and elsewhere,

**MICHAEL D. HAYDEN, JR.,**
**WILLIAM J. LEDNUM,**
**MICHAEL D. HAYDEN, JR., INC.,**
**KENT SADLER, and**
**LAWRENCE "DANIEL" MURPHY**

did knowingly attempt to engage in conduct involving the sale and purchase of wildlife, namely Striped Bass, with a market value in excess of $350, by knowingly attempting to transport and sell said wildlife in interstate commerce, knowing the wildlife to have been taken in violation of the laws and regulations of the State of Maryland, specifically COMAR §§ 08.02.05.02(A) (*eff.* 11/20/1994), 08.02.05.02(B) (*eff.* 4/12/2004), 08.02.15.07(D) (*eff.* 4/6/2009); to wit, the above-named defendants:

    a)   harvested more than the legal limit for a vessel for a single-vessel fishing trip scheduled from January 31 to February 1, 2011;

    b)   set unmarked, improperly-weighted, and other gill nets in the Chesapeake Bay and left them unattended;

    c)   set and left in place unmarked, improperly-weighted, and other gill nets prior to the season opening (i.e., February 1, 2011 at 3 a.m.) and between 6:00 p.m., and 3:00 a.m., when gill-netting is prohibited by COMAR; and

  d) attempted to illegally harvested approximately 20,000 pounds of Striped Bass

    in their unmarked, improperly-weighted, and other gill nets.

All in violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(2), 3372(a)(4), 3373(d)(1)(B) and 18

U.S.C. § 2.

## COUNT TWENTY-THREE
(Witness Retaliation)

68)     Paragraphs a through z (including all subparagraphs) of this Indictment are

hereby realleged and incorporated by reference as if fully set forth herein.

69)     On or about March 28, 2012, defendant

### MICHAEL D. HAYDEN, JR.

knowingly threatened to cause bodily injury to Witness #1, with the intent of retaliating against

Witness #1 for providing information to law enforcement officers ("LEOs") relating to the

possible commission of Federal conspiracy and Lacey Act violations: to wit, upon hearing that

Witness # 1 may have cooperated with LEOs, defendant **MICHAEL D. HAYDEN, JR.**,

contacted Witness #1, by telephone, and stated, "you rolled on me, motherfucker, a man told me

so, that's ok, I will take care of your ass" and further articulated that he believed Witness #1 had

cooperated with LEOs commenting, "I'll get your ass."

All in violation of 18 U.S.C. § 1513(b)(2).

## COUNT TWENTY-FOUR
(Witness Tampering
(Attempting to Influence Grand Jury Testimony of a Potential Witness)

70)     Paragraphs a through z (including all subparagraphs) of this Indictment are

hereby realleged and incorporated by reference as if fully set forth herein.

71)     On or about August 24, 2013, defendant

### MICHAEL D. HAYDEN, JR.

knowingly attempted to corruptly persuade Witness #2 with the intent of influencing Witness

#2's testimony before a Federal Grand Jury proceeding: to wit, **MICHAEL D. HAYDEN, JR.**,

learned that Witness #2 had been subpoenaed before a Grand Jury sitting in the District of

Maryland and contacted Witness #2 both by telephone and in-person and advised Witness #2 in

sum and substance to lie about the illegal harvesting of Striped Bass on the Chesapeake Bay

during his Grand Jury appearance.

All in violation of 18 U.S.C. § 1512(b)(1).

## COUNT TWENTY-FIVE
(Witness Tampering
Attempting to Prevent a Witness from Providing Grand Jury Testimony)

72)    Paragraphs a through z (including all subparagraphs) of this Indictment are hereby

realleged and incorporated by reference as if fully set forth herein.

73)    On or about August 24, 2013, defendant

## MICHAEL D. HAYDEN, JR.

knowingly attempted to corruptly persuade Witness #3 to withhold testimony from a Federal

Grand Jury: to wit, **MICHAEL D. HAYDEN, JR.**, learned that Witness #3 had been

subpoenaed to appear before a Grand Jury sitting in the District of Maryland, contacted Witness

#3 in person, and instructed Witness #3 not to tell Federal prosecutors or the Grand Jury

anything.

All in violation of 18 U.S.C. § 1512(b)(2)(A).

## COUNT TWENTY-SIX
(Asset Forfeiture)

74)    Paragraphs a through z (including all subparagraphs) of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

75)    Pursuant to Fed.R.Crim.P., 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 28 U.S.C. § 2461(c); and 16 U.S.C. § 3374, in the event of the defendants' conviction under Counts 2 through 22 of this Indictment, in violation of 16 U.S.C. §§ 3372, 3373(d)(1), 3373(d)(3).

76)    Upon conviction of the offenses charged in Counts 2 through 23 of this Indictment, the defendants

### MICHAEL D. HAYDEN JR.,
### WILLIAM J. LEDNUM,
### and MICHAEL D. HAYDEN, JR., INC.,

shall forfeit to the United States any and all vessels, vehicles, and other equipment used to aid in the transporting, selling, receiving, acquiring, or purchasing of wildlife in violation of 16 U.S.C. §§ 3372(a), 3372(d)(2), 3373(d)(1)(B), and 3373(d)(3), including, but not limited to the following:

   a) The vessel "Integrity," an Evans workboat, approximately 38 feet long with Maryland Boat identification number 4410BV and HIN number EVR38317G703 and all Striped Bass net and other harvesting and sorting equipment on that vessel;

   b) The vehicle, a 2009 Ford truck with VIN number 1FTSW21519EA03731 and Maryland Tag number 77W865.

c) The vessel "Kristin Marie," a vessel approximately 46 feet long (Coast Guard documentation number 1144370, hull number MVU46086K203) and all Striped Bass net and other harvesting and sorting equipment on that vessel; and

77)   If any of the property described above as being subject to forfeiture, as a result of any act or omission of any of the defendants:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of the property charged with forfeiture

Rod J. Rosenstein
United States Attorney

By:

Robert Dreher
Acting Assistant Attorney General
United States Department of Justice

A True Bill   **SIGNATURE REDACTED**
Foreperson

Date: _11/20/2013_

41