

twg
DJ# 198-35-01263

**Environmental Crimes Section**
*P.O. Box 7611*
*Washington, DC 20044*

U.S. Department of Justice

Environment and Natural Resources Division

*Telephone (202) 305-0739*
*Facsimile (202) 514-8865*

July 22, 2014

Tonya Kelly, Esq.
Biran Kelly, LLC
201 North Charles Street
Suite 2600
Email: tkelly@birankelly.com

*Via Electronic & First Class Mail*

Re: *United States v. Michael Hayden, et al.*, 1:13-cr-649 (RDB)
Plea Agreement

Counselor:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to your client, William J. Lednum (hereinafter, the "Defendant" or "Defendant Lednum"), by the United States Attorney's Office for the District of Maryland and the Environmental Crimes Section of the Department of Justice (hereinafter "the United States"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by July 29, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty to Count 1 of the Indictment now pending against him, which charges him with a violation of 18 U.S.C. § 371, a conspiracy to defraud the United States and to violate the Lacey Act's trafficking and false labeling provisions codified at 16 U.S.C. §§ 3372(a)(2), 3372(d)(2), 3373(d)(1)(B), 3373(d)(3)(A)(ii). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty and which the Government would provide if the case went to trial, are as follows:

   a. two or more persons conspired, or agreed, to defraud the United States and to violate the Lacey Act;

b. the defendant knowingly and voluntarily joined the conspiracy; and
c. a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy within the District of Maryland.

## Penalties

3.  The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: five years imprisonment, followed by a term of supervised release of three years, and a fine of $250,000.[1] In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. In addition, this Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

4.  If a fine or restitution is imposed, it shall be payable immediately unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. Pursuant to 42 U.S.C. § 10601(b)(1)(A), any fine imposed on the defendant for this offense shall be paid by the clerk into the Cooperative Endangered Species Conservation Fund, also known as the Lacey Act reward account.[2] Pursuant to 18 U.S.C. §3663, any restitution imposed by the Court will be paid to the National Fish and Wildlife Foundation (the "NFWF").[3] The restitution is to be used by the NFWF, or by another organization selected by the NFWF, in consultation with the United States Fish and Wildlife Service. All payments made to the NFWF shall be used to fund projects for the protection, scientific study, and/or restoration of marine and aquatic resources and associated habitat in the Chesapeake Bay Watershed. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and the United States may seek to be relieved of its obligations under this agreement.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

[2] This fund, containing criminal fines, penalties and forfeitures collected pursuant to the Lacey Act, is managed by the United States Fish and Wildlife Service. From this account are paid rewards to persons who furnish information that leads to an arrest, criminal conviction, civil penalty assessment, or forfeiture of property for any violation of the Lacey Act or its regulations, as well as the costs incurred by persons who provide temporary care for fish, wildlife, or plants pending the disposition of any civil or criminal Lacey Act proceeding. 16 U.S.C. § 3375(d).

[3] The NFWF is a charitable and nonprofit corporation established pursuant to 16 U.S.C. §§ 3701-3710. Its purposes include the acceptance and administration of "private gifts of property . . . to further the conservation and management of fish, wildlife, plants, and other natural resources," and the performance of "such other activities as will further the conservation and management of the fish, wildlife, and plant resources of the United States, and its territories and possessions for present and future generations of Americans." 16 U.S.C. § 3701(b)(1)&(2). The NFWF is empowered to "do any and all acts necessary and proper to carry out" these purposes, including, specifically, solicitation, acceptance, and administration of "any gift, devise or bequest . . . of real or personal property." 16 U.S.C. § 3703(c)(1)&(11).

5. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Collection of Financial Information

6. The Defendant expressly authorizes the United States to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

7. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

8. The Defendant will promptly submit a completed financial statement to the United States, in a form the United States prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Rights

9. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the United States, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant further understands convictions for felonies under this Agreement may subject him to administrative penalties and/or civil liability under state or Federal law including, but not limited to, municipal, state, and/or Federal environmental and wildlife laws and regulation. The Defendant acknowledges and agrees that the criminal fines, special assessment, and any restitution are negotiated amounts for plea purposes only, and do not legally bind or foreclose separate civil or administrative claims by any victims of this or other offenses. The parties agree that this agreement, and any payment under this agreement, will not constitute a settlement, waiver, or release by the United States of any civil or administrative rights or remedies it may have against the Defendant. The Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of its conviction on future administrative or civil liabilities, deportation and/or removal proceedings, and licensing. The Defendant nevertheless affirms that he wants to plead guilty regardless of any of any of the consequences that his plea may entail, even if the consequences avails him to administrative penalties and/or civil liabilities.

i. By pleading guilty, the Defendant may also face adverse consequences associated with certain Federal, state, and municipal licensing. By way of illustration and not limitation, these adverse consequences may include the Defendant's ability to procure a tidal fishing license in the State of Maryland or elsewhere. The Defendant understands and agrees that the status of his professional license is not a subject of this agreement and is a matter solely within the discretion of the

appropriate licensing authority. The Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of its conviction on future licensing. The Defendant nevertheless affirms that he wants to plead guilty regardless of any of any of the consequences that his plea may entail, even if the consequences mean that he will not be able to procure certain licenses in the future, including but not limited to a tidal fishing license in the State of Maryland.

### Advisory Sentencing Guidelines Apply

10. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Stipulations

11. Factual Stipulations:

   a. The parties stipulate and agree that the facts contained in Attachment A are submitted to the Court to provide the Court with the information necessary to support William Lednum's guilty plea as required by Rule 11 of the Federal Rules of Criminal Procedure and that additional facts and information may be submitted to the Court (on notice to all parties).

   b. The Defendant admits the facts set forth in Attachment A and agrees that those facts establish guilt of the offenses charged beyond a reasonable doubt.

   c. Attachment A of this plea agreement also constitutes a stipulation of facts for the purposes of Section 1B1.2(a) of the Sentencing Guidelines. The Defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the Defendant or stipulated by the parties.

   d. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant agrees that his sentence may be determined based upon such judicial fact-finding with the exception of any finding with respect to section 3C1.1. In that instance, the Defendants do not consent to factual findings based on hearsay and reserve the right to call and cross-examine witnesses with first-hand knowledge.

12. U.S.S.G. Stipulations: The Government and the Defendant understand, agree and stipulate to the Statement of Facts, set forth in Attachment A hereto, which the United States would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

a. Pursuant to § 2Q2.1(a) of the United States Sentencing Guidelines ("U.S.S.G"), the base offense level for each offense is six (6).

b. There is a two (2)-level increase under U.S.S.G. § 2Q2.1(b)(1) because the offense was committed for pecuniary gain or otherwise involved a commercial purpose.

c. There is a fourteen (14)-level increase based upon a fair market retail value amount exceeding $400,000, pursuant to U.S.S.G. § 2Q2.1(b)(3)(A)(ii) and § 2B1.1(b)(1).

d. The parties specifically reserve the right to argue for the applicability of adjustments under U.S.S.G. § 3C1.1 at the time of sentencing. The defendant's adjusted offense level is therefore between 22 and 24.

e. The United States does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. The United States agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. The United States may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, the United States, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

f. The defendant's total offense level is between 19 to 21.

13. Restitution Stipulations.

a. The parties further stipulate and agree that during the duration of the conspiracy, the Defendant and his co-conspirators harvested, possessed, falsely-labeled, and/or sold 185,925 pounds of Striped Bass that directly deprived the State of Maryland of this natural resource.

b. The parties stipulate and agree that the State of Maryland is a victim and therefore entitled to restitution from the defendant and his co-conspirators pursuant to 18 U.S.C. § 3572(d).

c. The parties have not reached a final agreement on the amount of restitution that is due the State of Maryland. However, the parties agree that the restitution value is not less than the wholesale value of the fish (i.e., $498,293.47) but not more than the value prescribed by COMAR § 08.02.09.01[4] (i.e., $929,625.00). Accordingly,

---

[4] That COMAR provision prescribes a specific restitution value for Striped Bass of $5.00/pound.

-6-

the defendant agrees to the entry of a restitution judgment in an amount between $498,293.47 and $929,625.00 for which he will be jointly and severally liable with his co-conspirators.

14. Criminal History. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

15. 18 U.S.C. § 3553(a) factors: The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct. If the Defendant wishes to argue for any factor that could take the sentence outside of the advisory guidelines range, he will notify the Court, the United States Probation Officer and government counsel at least ten (10) days in advance of sentencing of the facts or issues he intends to raise. Submitting a sentencing memorandum setting forth the request for a variant sentence and basis for the request shall constitute adequate notice under the foregoing provision.

16. Criminal Fine: The parties reserve the right to argue the appropriate amount of any criminal fine to be imposed pursuant to 18 U.S.C. § 3572.

17. Forfeiture: The parties agree that forfeiture is appropriate regarding the vessel "Kristin Marie" (Coast Guard documentation number 1144370; hull number MVU46086K203) insofar as said vessel was an instrumentality used in furtherance of violations of 16 U.S.C. §§ 3372(a), 3372(d)(2), 3373(d)(1)(B), and 3373(d)(3).

    a. The parties agree that within thirty (30) days of the entry of defendants Lednum's and Hayden's guilty pleas, that the boat will be appraised by a licensed third-party marine surveyor approved by both the United States and the Defendants. The costs of said appraisal will be paid by defendants Hayden and Lednum.

    b. The parties further agree that defendants Hayden and Lednum will consent to the entry of a money judgment in lieu of forfeiture of the "Kristin Marie" in an amount equal to eighty percent (80%) of the third-party appraisal which may be satisfied by either through substitute assets or through the relinquishment of the Kristen Marie to the United States Marshalls.

    c. Defendants Hayden and Lednum will be jointly and severally liable for both the appraisal costs and the asset forfeiture amount. The Defendant further agrees that he is liable for 50% of the amount specified in the preceding paragraph, to be paid in installments as determined by the Court during any term of probation or supervised release as adjudged by the Court.

    d. The parties agree that the forfeiture amount specified in subparagraph (b) above shall be paid into the fund for restitution and credited against the order of restitution specified in paragraph 12 above.

## Obligations of the United States

18.    At the time of sentencing, the Government will move to dismiss all remaining counts as against the Defendant contained in the Indictment.

19.    At the time of sentencing, if the Defendant has not argued for a sentence different than one called for under the guidelines calculation outlined above, the Government will recommend: (1) sentencing at the low end of the monthly numeric guideline applicable. Otherwise, the Government will argue for a sentence within the guideline range.

20.    The Defendant acknowledges that this agreement does not bind any federal, state, or local prosecuting authority other than the United States. The Defendant acknowledges that no representations have been made to him with respect to any tax, civil, administrative, and/or licensing consequences that may result from this guilty plea. In light of the forfeiture agreed upon herein, the Government will undertake no other forfeiture proceedings.

## Waiver of Appeal & Collateral Attack

21.    In exchange for the concessions made by the United States and the Defendant in this plea agreement, the United States and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives his rights, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and the United States knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment for Count One to the extent that it exceeds the range for Guideline Offense level 21 and the corresponding criminal history, (ii) and the United States reserves the right to appeal any term of imprisonment for Count One to the extent it is less than the range for Guideline Offense level 19 and the corresponding criminal history.

   c. Nothing in this agreement shall be construed to prevent the Defendant or the United States from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the United States or any investigating agency.

## Waiver of Statute of Limitations

22. The Defendant understands and agrees that should the conviction following his plea of guilty pursuant to this agreement be vacated for any reason, then any prosecution that is not time-barred as of the date of the signing of this agreement (including any indictment or counts that the United States has agreed to dismiss at sentencing) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement or reinstatement of such prosecution. The Defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date this plea agreement is signed.

## Obstruction or Other Violations of Law

23. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then the Government will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, the United States will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, the Government will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because the United States is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

24. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulations set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept the Government's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines

range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

25. This letter supersedes any prior understandings, promises, or conditions between the United States and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and the Government other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: *(signature)*
P. Michael Cunningham
Assistant United States Attorney

Sam Hirsch
Acting Assistant Attorney General
Environment and Natural Resources Division

By: *(signature)*
Todd W. Gleason, Senior Trial Attorney
Shennie Patel, Trial Attorney
Environmental Crimes Section

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/24/14
Date

*(signature)*
William J. Lednum

I am William Lednum's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

7/24/14
Date

*(signature)*
Tonya Kelly, Esq.

- 10 -

# ATTACHMENT A
## Statement of Facts

*The undersigned parties hereby stipulate and agree that if this matter had gone to trial, the Government would have proven the following facts beyond a reasonable doubt. The parties also stipulate and agree that the following facts do not encompass all of the evidence which would have been presented had this matter gone to trial.*

a) From at least 2007 through 2011 the Defendant resided in Tilghman Island, Maryland and was a "captain" on fishing vessels owned by him, his company William J. Lednum Fisheries, d/b/a, Michael D. Hayden, Jr., and Michael D. Hayden, Jr., Inc. They also employed numerous "helpers" as part of this operation, including, but not limited to co-defendants Kent Sadler, Lawrence Daniel Murphy, and other un-indicted co-conspirators.

b) Defendants Hayden and Lednum employed and paid Lawrence Daniel Murphy during the commercial Striped Bass gill-netting seasons from December 2007 through March 2011. Specifically, they employed Lawrence Daniel Murphy to serve as a helper pulling gill nets during 24 of the 45 weeks of the aforementioned seasons and paid him $74,510.00 between January 1, 2007 and February 6, 2011. The $74,510 represents compensation to Mr. Murphy for work he performed during the gill-netting seasons as well as other times of the year.

c) The Defendant, and his co-conspirators were subject to certain commercial gill netting harvest regulations including, but not limited to, fishing during specified seasons and times of the day (e.g., gill nets could not be left in the water overnight); gill nets could not be anchored or fixed to the bottom but had to remain free floating and attended; all harvested Striped Bass were required to be "tagged" with a plastic tag issued by the State of Maryland.

d) Defendants Lednum's and Hayden's vessels were subject to a catch limit for any given fishing trip – i.e., a maximum weight limit for Striped Bass that were permitted on a vessel at any given time. In addition, defendants Hayden and Lednum were also personally limited to a set amount of Striped Bass for their respective daily allocation permits.

e) The Defendant, and his co-conspirators were also required to accurately record each day's harvest of Striped Bass on a permit allocation card and monthly "daily catch record" summarizing their preceding month's harvest of Striped Bass. Each day's harvest and its corresponding entry on the permit allocation card was required to be verified by a Maryland designated check-in station. Both of these records must subsequently be submitted to the State of Maryland.

f) From at least 2007 to 2011, the Defendant and his co-conspirators illegally harvested, possessed, falsely labeled, and/or sold at least 185,925 pounds of Striped Bass (i) using illegal methods including, through the use of illegally weighted and/or anchored gill nets, nets left in the water overnight, and nets set during times when the commercial Striped Bass gill-netting season was closed; (ii) exceeded their maximum daily vessel limit of Striped Bass and either unloaded the surplus onto an anchored vessel or paid other un-indicted co-conspirators a fee to check-in fish for them; and/or (iii) falsified the permit allocation cards and daily catch records for their Striped Bass fishing trips to over-report the numbers of Striped Bass caught and

under-report the weights. This allowed the co-conspirators to request additional tags from the State of Maryland under false pretenses and therefore harvest additional Striped Bass illegally.

g) From at least 2007 to 2011, the Defendant and his co-conspirators shipped and sold 185,925 pounds of illegally harvested, possessed, and/or falsely-labeled Striped Bass to wholesalers in New York, Pennsylvania, Delaware, and Maryland. These sales to wholesalers totaled $498,293.47 with much higher subsequent retail sales.* None of the aforementioned Striped Bass was properly reported at check-in stations or on the permit allocation cards of daily catch records submitted to the State of Maryland.

h) When Hayden and Lednum were setting nets illegally, Murphy was often on the boat. Likewise, when Hayden and Murphy transferred rockfish to other vessels to skirt regulatory restrictions, Murphy was often on the boat.

i) From at least 2007 to 2011 the Defendant and his co-conspirators used the vessels "Integrity,"[5] on at least one occasion, and the vessel "Kristin Marie"[6] for all other fishing trips. These vessels were used to facilitate the illegal harvest, transport to check-stations, and/or false labeling of Striped Bass specified in the preceding paragraphs.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_____
William J. Lednum

_____
Tonya Kelly, Esquire
Counsel to Mr. Lednum

* Here, the applicable "market value" is difficult to ascertain with precision given the information currently available. After reviewing U.S.S.G. § 2Q2.1, note 4, the parties to this agreement stipulate that the values provided herein reflect a "reasonable estimate" of the market value given the information currently available. The parties reserve the right to introduce additional evidence of "market value" (e.g., ultimate retail sales figures and/or restitution values as defined by COMAR) as it becomes available for the purposes of calculating restitution figures.

---

[5] Maryland Boat identification number 4410BV and HIN number EVR38317G703.
[6] Coast Guard documentation number 1144370, hull number MVU46086K203.